UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ROAD SPRINKLER FITTERS LOCAL UNION NO. 669, <br><br> Plaintiff, <br><br> v. <br><br> SUMMIT FIRE & SECURITY LLC, *et al.*, <br><br> Defendants. | Case No. 3:23-cv-00177-ART-CLB <br><br> ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT |

Plaintiff Road Sprinkler Fitters Local Union No. 669 (Local 669) brings this action against Defendants Summit Fire & Security LLC (SFS) and SFP Holding, Inc. (Holding). Local 669 alleges that Defendants have violated their Neutrality Agreement—which controls each party's behavior as Local 669 attempts to unionize SFS shops—by refusing to comply with the Agreement's arbitration clause. Local 669 now seeks enforcement of the arbitration clause and a declaration of the scope the arbitrator's remedial authority under that clause.

Before the Court are parties' cross-motions for summary judgment. (ECF Nos. 34, 35.) For the reasons identified below, the Court grants summary judgment in favor of Local 669 and denies it for SFS and Holding. Parties are compelled to arbitrate their dispute. The arbitrator has the authority to nullify the Neutrality Agreement under the arbitration clause, if he determines that nullification is appropriate to "give effect to [each party's] rights" under the Agreement.

**I.    BACKGROUND**

The relevant facts in this case are not in dispute. (*See* ECF No. 32.) Plaintiff Local 669 and Defendants Holding and SFS are parties to a contract known as the "Neutrality Agreement." (*Id.* at 2.) The Neutrality Agreement guarantees Plaintiff the right to engage in a shop-by-shop campaign to unionize SFS's local

branches, without interference from Defendants. (ECF No. 32-4.)

Plaintiff believes that Defendants violated the Neutrality Agreement by contributing to the decertification of Plaintiff as the sole union representative of SFS's Salt Lake City branch. (ECF No. 23 at ¶¶ 20-26.) In June of 2021, Plaintiff invoked the Neutrality Agreement's arbitration clause to challenge Defendants' alleged breach. (ECF Nos. 32 at 2-3; 32-4 at 5-6.)

At arbitration, Plaintiff requested a single remedy: nullification of the Neutrality Agreement. (ECF No. 32 at 3.) Defendants responded by arguing that the arbitration clause did not grant the arbitrator authority to nullify the Agreement. (*Id.*) The arbitrator decided not to proceed with the hearing on the merits until the scope of his remedial authority was resolved. (*Id.* at 4.)

Plaintiff then brought suit in this Court. (ECF Nos. 1, 23.) Plaintiff requests enforcement of the arbitration clause and a declaration either (1) that the arbitrator affirmatively has the power to nullify the Neutrality Agreement or (2) that arbitrator must resolve whether he has the power to nullify the Agreement. (ECF No. 23 at 7-9.)

The arbitration clause of the Neutrality Agreement states:

> If there is a question or dispute concerning any . . . rights under this Agreement, either party may . . . . [submit the dispute] to expedited arbitration using a mutually agreeable arbitrator. . . . The arbitrator will be limited to construing the rights of the parties under this Agreement and fashioning a remedy to give effect to those rights.

(ECF No. 32-4 at 5-6.)

Each party now brings its own motion for summary judgment. (ECF Nos. 34, 35.)

**II.    LEGAL STANDARD**

Summary judgement is appropriate if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 248 (1986). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Here, the parties have stipulated to all disputable material facts relevant to this case. (ECF No. 32.) Since there are no material facts in dispute before the Court, either party may prevail if it can show that it is entitled to judgment as a matter of law. *Cf. Sierra Forest Legacy v. U.S. Forest Svc.*, 652 F. Supp. 2d 1065, 1074 (N.D. Cal. 2009) (finding that when the "Court's review is confined to the administrative record, [the] case presents no questions of material fact that would render it inappropriate for resolution by summary judgment").

Section 4 of the Federal Arbitration Act provides that a party "aggrieved" by the failure of another party "to arbitrate under a written agreement for arbitration" may petition a federal court "for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. The court "shall" order arbitration "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." *Id.*

The Declaratory Judgment Act provides:

> "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration . . . . Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

28 U.S.C. § 2201.

**III.   DISCUSSION**

Defendants make two arguments in their favor on these cross-motions for summary judgment. First, they argue that the Court lacks subject matter jurisdiction over Plaintiff's claims. Second, they argue that it is the arbitrator's responsibility, and not the Court's, to declare nullification a valid remedy at arbitration. The Court finds neither argument persuasive and concludes that Plaintiff is entitled to judgment as a matter of law.

//

**A. Subject Matter Jurisdiction**

Plaintiff asserts federal question jurisdiction based on two federal statutes: Section 301(a) of the Labor Management Relations Act (LMRA) and the Declaratory Judgment Act. 29 U.S.C. § 185(a); 28 U.S.C. §§ 1331, 2201. Because federal courts are courts of limited jurisdiction, they may adjudicate matters only when the Federal Constitution and the laws of Congress authorize them to do so. *See* U.S. CONST. art. III, § 2, cl. 1; *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1944). "Federal question" jurisdiction refers to federal district courts' authority to adjudicate "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Both parties agree that the Declaratory Judgment Act does not provide an independent basis for federal question jurisdiction. *City of Reno v. Netflix, Inc.*, 52 F.4th 874, 878 (9th Cir. 2022) (holding that the Declaratory Judgment Act "does not provide a cause of action when a party . . . lacks a cause of action under a separate statute and seeks to use the Act to obtain affirmative relief"). So, this Court has jurisdiction over Plaintiff's claims only if they arise properly under the LMRA.

Section 301(a) of the LMRA grants federal district courts subject matter jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." 29 U.S.C. § 185(a).[1] The Ninth Circuit and Supreme Court have both held that Section 301(a) does not apply to cases in which a plaintiff seeks broadly to invalidate a labor contract without alleging a specific violation of that contract. *Textron Lycoming Reciprocating Engine Div., Avco Corp. v. UAW*, 523 U.S. 653, 658 (1998); *Nu Image, Inc. v. IATSE*, 893 F.3d 636, 640-41 (9th Cir. 2018).

---

[1] Plaintiff contends, and Defendants do not dispute, that Section 301 encompasses labor/employer neutrality agreements such as the one at issue in this case. *See, e.g., Hotel Emps, Restaurant Emps Union, Local 2 v. Marriott Corp.*, 961 F.2d 1464, 1469-70 (9th Cir. 1992) (holding that the federal district court had jurisdiction over parties' "Employer Neutrality" clause pursuant to Section 301 of the LMRA). The Court agrees: Section 301(a) applies to the parties' Neutrality Agreement.

4

Defendants incorrectly argue that Section 301(a) does not apply here because Plaintiff seeks only to invalidate the Neutrality Agreement without alleging a violation of that agreement. Plaintiff's First Amended Complaint clearly alleges, as an element of Claim 1, that Defendants violated the Neutrality Agreement by failing to comply with its arbitration clause. (ECF No. 23 at ¶¶ 36 (alleging that Defendants' refusal to recognize the arbitrator's remedial authority "constitutes a breach and repudiation of the dispute resolution provisions of the Neutrality Agreement"), 37 ("Defendants' rejection and refusal to recognize the arbitrator's authority to rescind or nullify the Neutrality Agreement contravenes an express term of the Neutrality Agreement.").)

The two cases that Defendants cite to support their argument—*Textron* and *Nu Image*—are inapposite. In both cases, plaintiffs sought to invalidate labor agreements under theories that defendants' dishonest behavior during the negotiation of those agreements rendered them invalid. *Textron*, 523 U.S. at 655 (describing Plaintiff's claim of fraudulent inducement); *Nu Image*, 893 F.3d at 638 (describing plaintiff's claim of negligent misrepresentation). In both cases, the reviewing courts held that the LMRA did not grant jurisdiction because the plaintiffs, who asserted that their labor agreements were void *in toto,* failed to assert a violation of those agreements. *Textron,* 523 U.S. at 661-62; *Nu Image*, 893 U.S. at 640-41.

This Court has subject matter jurisdiction over Plaintiff's claims. Because Plaintiff has alleged a "violation of [a] contract[] between an employer and a labor organization representing employees in an industry affecting commerce," the Court has jurisdiction over Plaintiff's claim to compel arbitration pursuant to Section 301(a) of the LMRA. 29 U.S.C. § 185(a). Because Plaintiff has an independent basis for appearing in federal court, the Court has jurisdiction over Plaintiff's declaratory judgment claim pursuant to the Declaratory Judgment Act. *Nu Image,* 893 F.3d 636 at 640 (quoting *Textron,* 523 U.S. at 657-58) (stating

that, once a party has entered through the LMRA's "jurisdictional gateway" by pleading a violation of a labor agreement, a court may exercise jurisdiction over that plaintiff's ancillary claims, including claims for declaratory judgment); *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671-72 (1950) (holding that federal courts have jurisdiction to hear claims under the Declaratory Judgment Act, as long as they have an independent basis for asserting at least one other claim in federal court).

The Court has considered Defendants' other arguments and finds them unpersuasive.

### B. Arbitrability

The dispute is now simple. Plaintiff seeks to arbitrate an alleged breach of the Neutrality Agreement and requests nullification as its only remedy. Defendants argue that the arbitrator lacks authority to nullify the Agreement on the facts alleged. To resolve this disagreement, the Court must determine whether the arbitration clause of the Neutrality Agreement reflects the parties' intent to submit their particular dispute to the arbitrator, with nullification as a potential remedy. It is helpful here to review some foundational principles of the law of arbitration.

### 1. Principles of Arbitrability

"[T]he task for courts and arbitrators . . . [is] to give effect to the intent of the parties." *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 184 (2019). "Arbitration is strictly a matter of consent . . . ." *Granite Rock Co. v. International Broth. Of Teamsters*, 561 U.S. 287, 299 (2010). "[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648 (1986).

In the arbitration context, courts typically resolve questions of arbitrability—that is, whether parties have consented to submit a particular

1 dispute to arbitration—while arbitrators address the merits of the underlying
2 dispute. *AT & T Technologies*, 475 U.S. at 649 ("the question of arbitrability . . .
3 is undeniably an issue for judicial determination"); *Steelworkers v. American Mfg.*
4 *Co.*, 363 U.S. 564, 568 (1960) ("The courts . . . have no business weighing the
5 merits of a grievance, considering whether there is equity in a particular claim,
6 or determining whether there is particular language in the written instrument
7 which will support the claim."). Since arbitration is a matter of contract, parties
8 may consent to have an arbitrator decide issues of arbitrability, rather than a
9 court. They must do so through "clear and unmistakable" expressions of consent.
10 *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *AT & T*
11 *Technologies*, 475 U.S. at 649. The Court finds no such expression apparent on
12 the materials before it. The Court is empowered to determine, and will determine,
13 the arbitrability of the parties' underlying dispute.

14     Defendants argue that this Court may not decide whether their dispute is
15 arbitrable because of a rule that applies to claims of contractual invalidity. That
16 rule says that, when a party to a contract containing an arbitration provision
17 challenges the validity of the entire contract, and not the arbitration provision
18 itself, an arbitrator must resolve that challenge. *Buckeye Check Cashing, Inc. v.*
19 *Cardegna*, 546 U.S. 440, 445-46 (2006) ("unless the challenge is to the arbitration
20 clause itself, the issue of the contract's validity is considered by the arbitrator in
21 the first instance."). The rule stems from Section 2 of the Federal Arbitration Act,
22 which requires courts to treat arbitration clauses as severable from the contracts
23 in which they appear and to enforce those clauses unless a party resisting
24 arbitration specifically challenges their validity or enforceability. *Granite Rock*
25 *Co.*, 561 U.S. at 300 (citing *Buckeye*, 546 U.S. at 443-45).

26     Defendants are wrong to invoke this rule here. Plaintiff does not ask the
27 Court to determine the validity of the Neutrality Agreement. Rather, Plaintiff
28 requests a determination of whether the Neutrality Agreement's arbitration

7

clause applies to the parties' dispute. (ECF No. 23 at ¶¶ 36-37, 40.) This is a typical issue of arbitrability over which the Court has authority, for the reasons identified above. *See AT & T Technologies*, 475 U.S. at 649 ("the question of arbitrability . . . is undeniably an issue for judicial determination"). Even if Defendants' rule did apply here, that rule would merely require the Court to determine the scope of the arbitration agreement and to reserve the broader question of the Neutrality Agreement's validity for the arbitrator. *See Granite Rock Co.*, 561 U.S. at 300 (stating that Section 2 of the FAA requires "that courts treat an arbitration clause as severable from the contract in which it appears and enforce it according to its terms unless the party resisting arbitration specifically challenges the enforceability of the arbitration clause itself, or claims that the agreement to arbitrate was '[n]ever concluded'") (citations omitted). That is, effectively, what the Court has done in this order. While Plaintiff may ultimately seek to nullify the Neutrality Agreement, it rightfully reserves that issue for the arbitrator.

In resolving the arbitrability issue, the Court must walk a fine line between interpreting the language of the contract and addressing the merits of the dispute. The Court is required to determine, through careful analysis of the contract's terms, whether the Parties have consented to arbitrate the *particular dispute* at issue here. *First Options*, 514 U.S. at 943 (holding that arbitration "is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration"); *Granite Rock Co.*, 561 U.S. at 299 (applying the above principle and holding that "courts should order arbitration of a dispute only where the court is satisfied that . . . the parties' arbitration agreement . . . appli[es] to the dispute."). When performing this inquiry, the Court is empowered to "resolve any issue that calls into question the . . . applicability of the specific arbitration clause" to the dispute in question. *Granite Rock Co.*, 561 U.S. at 297; *id.* at 300 (holding that, where a party contests the applicability of an arbitration

1  agreement to its dispute, "the court must resolve the disagreement"). But the
2  Court must be careful not to encroach on the arbitrator's authority by needlessly
3  addressing the merits of the underlying dispute. *See, e.g., AT & T Technologies*,
4  475 U.S. at 649 ("[I]n deciding whether the parties have agreed to submit a
5  particular grievance to arbitration, a court is not to rule on the potential merits
6  of the underlying claims)"; *American Mfg. Co.*, 561 U.S. at 568 ("When the
7  judiciary undertakes to determine the merits of a grievance under the guise of
8  interpreting [arbitrability] . . ., it usurps a function . . . entrusted to the arbitration
9  tribunal.").

With these principles in mind, the Court turns to the arbitration clause.

## 2. Interpreting the Arbitration Clause

The arbitration clause states that Plaintiff and Defendants consent to arbitrate "question[s] or dispute[s] concerning any . . . rights" under the Neutrality Agreement.[2] (ECF No. 32-4 at 5-6.) They also agreed to grant the arbitrator the authority to "construe[] the rights of the parties under [the Neutrality] Agreement and fashion[] a remedy to give effect to those rights." (*Id.* at 6.) The parties agree that the arbitration clause is valid, that it is severable from the remainder of the Neutrality Agreement, and that it covers the facts of the underlying dispute. (See ECF No. 35 at 13-14.) They disagree only as to the propriety of the remedy sought.

To determine whether the arbitration clause provides for a particular remedy, the Court must first identify the specific remedy that Plaintiff seeks. There is some inconsistency on this point. The Parties' Joint Stipulation of Facts and Exhibits states that Plaintiff seeks "nullification" of the Neutrality Agreement. (ECF No. 32 at 3 ("In its opening statement, the Union indicated that the only remedy it sought was nullification of the Neutrality Agreement").) At other times,

---

[2] The arbitration clause excludes disputes related to "a violation by the Union of its commitments in Section 3(b)." That provision addresses Plaintiff's obligations to avoid unfairly interfering in the unionization process. Neither party argues that it applies here.

9

1  Parties have referred to Plaintiff's proposed remedy as "rescission," a "voiding" of
2  the Agreement, or a rendering of the Agreement "*void ab initio.*" (*See, e.g.*, ECF
3  Nos. 39 at 4 n.5 (arguing that "[a] failure for a condition precedent to occur does
4  not result in the recission or voiding of an otherwise valid contract . . . ."); 23 at
5  ¶ 40 (requesting a judicial declaration that "the arbitrator has the authority to
6  nullify the Neutrality Agreement as void ab initio"). Some of these "remedies" are
7  broad or legally imprecise. *See Nullify*, Black's Law Dictionary (12th ed. 2024)
8  ("To make void; to render invalid"); *Void*, Black's Law Dictionary (12th ed. 2024)
9  ("To render of no validity or effect; to annul . . . ."). Others have particular legal
10 definitions which, according to Defendants, could affect the outcome of this case.
11 *See Void ab Initio*, Black's Law Dictionary (12th ed. 2024) ("Null from the
12 beginning, as from the first moment when a contract is entered into."); *Loomis,*
13 *Inc. v. Cudahy*, 656 P.2d 1359 (Idaho 1982) (stating that rescission is an
14 appropriate remedy where the contract is induced by fraud, mistake, or duress
15 or when agreed to by mutual consent); *Baker v. Penn Mut. Life Ins. Co.*, 788 F.2d
16 650 (10th Cir. 1986) (same).

17  Based on the Parties' Joint Stipulation of Facts and Exhibits, the Court
18 interprets Plaintiff to seek any possible remedy that would result in a termination
19 of its obligations under the Neutrality Agreement. The Court will answer the
20 arbitrability question with that goal in mind: if there exists a remedy that, when
21 applied to the dispute underlying this matter, could result in the termination of
22 Plaintiff's duty to perform under the Neutrality Agreement, and which can be said
23 to "give effect" to Plaintiff's rights "under [that] Agreement," the dispute must go
24 to arbitration.

### a. Choice of Law

26  Courts interpret arbitration provisions by applying "ordinary state-law
27 principles that govern the formation of contracts." *First Options*, 514 U.S. at 944.
28 Where, as here, "there is no federal interest in supplanting the otherwise

10

applicable choice-of-law rule," courts exercising federal question jurisdiction apply the choice-of-law rules of the forum state. *California Department of Toxic Substances Control v. Jum Dobbas, Inc.*, 54 F.4th 1078, 1089 (9th Cir. 2022) (internal quotation marks omitted). So, Nevada's choice-of-law rules apply.

Nevada courts adjudicating contractual disputes apply the substantial-relationship test. *Williams v. United Servs. Auto. Ass'n*, 849 P.2d 265, 266 (Nev. 1993). "Under this test, the state whose law is applied must have a substantial relationship with the transaction and the transaction must not violate a strong public policy of Nevada." *Id.* Nevada courts consider five factors in determining whether a state has a substantial relationship to a claim: (1) "the place of contracting"; (2) "the place of negotiation of the contract"; (3) "the place of performance"; (4) "the location of the subject matter of the contract"; and (5) "the domicile, residence, nationality, place of incorporation and place of business of the parties." *Id.* Each factor is assessed at the time of contracting. *Id.*

Applying this test, the Court concludes that Utah law governs. The Court finds that the Neutrality Agreement does not violate a "strong public policy of Nevada." *Id.* There is insufficient information on the record to address factors one and two of the substantial relationship test. The fifth factor indicates dispersed interests, as Parties are based in Maryland, Delaware, Nevada, and Minnesota, and SFS conducts at least some business in Utah and Nevada. (ECF No. 23 at ¶¶ 2-5, 11.) The fourth and fifth factors strongly favor the application of Utah law. While the Neutrality Agreement concerns the unionization of SFS branches in several states, the specific conflict underlying this case concerns the attempted unionization of SFS's Salt Lake City branch. Since there is no state with a stronger claim on the transaction, for purposes of this dispute, than Utah, Utah law controls.[3]

---

[3] Were this Court to find that Nevada law applies, its analysis below would be the same.

11

### b. Application of Utah Law

The First Amended Complaint identifies "failure of a condition precedent" as a basis for termination of Plaintiff's obligations under the Neutrality Agreement. (*See* ECF No. 23 at ¶ 28.) Defendants rely on this reference to argue that nullification is not an available remedy.

Under Utah law, failure of a condition precedent renders a contract void from its inception. *McArthur v. State Farm Mut. Ins. Co.*, 274 P.3d 981, 988 (Utah 2012) ("where a condition precedent has not been fulfilled, there is no contract or covenant to breach"). The Court agrees with Defendants that this doctrine, which requires a finding that the contract in question was never validly formed, cannot be said to give effect to either party's rights "under" the Neutrality Agreement. This conclusion would pose a problem for Plaintiff, if Plaintiff relied solely on the doctrine of failure of a condition precedent.

Plaintiff clearly identifies breach as an independent basis for terminating its obligations under the contract. (*Compare* ECF No. 23 at ¶ 28 (referring to Local 669's decertification as a failure of "a condition precedent") *with id. a*t ¶ 22 (claiming that SFS's involvement in the decertification process constituted a "violation of the Neutrality Agreement"); *see also* ECF No. 34 at 10 (describing two questions relevant to the dispute before the arbitrator: "[(1)] whether the Defendants violated the Neutrality Agreement by committing the alleged actions contained in the Neutrality Agreement Grievance and [(2)] whether Defendants satisfied the condition precedent of the Neutrality Agreement"). Plaintiff would not have referenced Defendants' breach if it intended to rely solely on the doctrine of failure of a condition precedent, since, as explained above, that doctrine

---

Like Utah, Nevada applies the Second Restatement's rules on rescission for material failure of performance. *Cain v. Price*, 415 P.3d 25, 29 (Nev. 2018) (citing Restatement (Second) of Contracts § 237 (Am. Law Inst. 1981)) ("When parties exchange promises to perform, one party's material breach of its promise discharges the non-breaching party's duty to perform.").

renders the question of breach irrelevant.

Utah law allows for rescission in the case of material breach. *McArthur*, 274 P.3d at 987; *Aquagen Intern., Inc. v. Calrae Trust*, 972 P.2d 411, 414 (Utah 1998) (applying the Second Restatement's doctrine of "material failure of performance"). Under the Utah rule, "[w]hen one party to a valid contract commits an 'uncured material failure' in its performance of the contract, the non-failing party is relieved of its duty to continue to perform under the contract." *Aquagen Intern.*, 972 P.2d at 414. A material failure is "uncured" if the failure persists beyond a prescribed time-period or if parties are deemed unable to correct the failure. RESTATEMENT (SECOND) OF CONTRACTS § 225(2) (Am. Law Inst. 1981) ("unless it has been excused, the non-occurrence of a condition discharges the duty when the condition can no longer occur."); *see Aquagen Intern.*, 972 P.2d at 414.

Nullification under this doctrine does not render a contract void from its inception, as Defendants suggest. Rather, Utah law describes rescission for material breach as a right which a party "retains" upon the formation of a legally actionable contract. *McArthur*, 274 P.3d at 987-88 (Utah 2012) (distinguishing between nullification for failure of a condition precedent—which renders the contract *void ab initio* and grants parties "no right to contract remedies"—from nullification for material breach—which treats the contract as valid and has the potential to result in "termination or rescission of the contract"); RESTATEMENT (SECOND) OF CONTRACTS § 237 cmt. a (Am. Law Inst. 1981) (mimicking this distinction in the doctrines of "failure of consideration" and "absence of consideration").

Given the above, the Court concludes that the arbitration clause at issue in this case grants the arbitrator the authority to nullify Plaintiff's obligations under the Neutrality Agreement, at least in some instances. If Defendants were found to have materially failed to satisfy some obligation under the Neutrality Agreement, and that failure was deemed incurable, nullification could be an

13

1  available remedy. This conclusion stems from the arbitrator's broad authority to
2  "constru[e] the rights of the parties under [the Neutrality] Agreement and
3  fashion[] a remedy to give effect to those rights." It also stems from Utah law's
4  treatment of rescission for material breach as a "retain[ed]" right related to an
5  existing contract and from this Court's finding that such a remedy can be
6  reasonably read to "give effect" to a party's rights "under [the Neutrality]
7  Agreement." *See McArthur*, 274 P.3d at 987.

8  Even if the arbitration clause did not clearly grant the arbitrator the
9  authority to nullify the Agreement, arbitration would still be appropriate under
10 the longstanding federal policy favoring arbitration. That policy dictates that, "any
11 doubts concerning the scope of arbitral issues should be resolved in favor of
12 arbitration." *Columbia Export Terminal, LLC v. International Longshore and*
13 *Warehouse Union*, 23 F.4th 836, 847 (9th Cir. 2022); *Granite Rock Co.*, 561 U.S.
14 at 298; *see also First Options of Chicago*, 514 U.S. at 945 (citing *Mitsubishi Motors*
15 *Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985)); *AT & T*
16 *Technologies*, 475 U.S. at 650 ("an order to arbitrate the particular grievance
17 should not be denied unless it may be said with positive assurance that the
18 arbitration clause is not susceptible of an interpretation that covers the asserted
19 dispute. Doubts should be resolved in favor of coverage").

20 The Court stresses that it does not decide here *whether* nullification, based
21 on rescission or some other doctrine, is an appropriate remedy. It merely holds
22 that rescission resulting from material breach is one of several possible remedies
23 the arbitrator is authorized to impose under the arbitration clause.

24 **IV.   CONCLUSION**

25 It is therefore ordered that Plaintiff Local 669's motion for summary
26 judgment (ECF No. 34) is granted. Parties are compelled to arbitrate the dispute
27 relevant to this action. If the arbitrator deems it appropriate, in light of his
28 authority under the arbitration clause, the applicable law, and the facts before

14

him, he is authorized to nullify Plaintiff's obligations under the Neutrality Agreement.

It is further ordered that Defendants' cross motion for summary judgment (ECF No. 35) is denied.

The Clerk of Court is directed to enter judgment accordingly and close this case.

Dated this 16th day of August 2024.

_____
ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE

15